We had a colleague before that came up with this, checking to see if it's kind of automatic. This, as indicated in the papers, this was a case where this African American family moved to a predominantly white school district from a special ed class with 4 special ed staff and 10 special ed students and moved to a college where it was placed in a regular ed class with 20 regular ed students and 2 regular ed staff, one teacher and one aide. To do that, the Collinswood district simply crossed out the name Camden on the IEP and put the name Collinswood on the IEP. As a result, this child who had a history of severe hyperactivity and behavioral disorders wound up being constantly restrained, removed from class, and the parents... September 2008, am I correct? You are correct. And an IEP was signed at that time by the F's parent. Correct. And does that have any significance? It has no significance under the court's rule in NC versus regional school district where they're not going to hold the child's right to special ed to an appropriate education based on the diligence of their parent. But they're going to hold it to the school district's affirmative duty to offer a fully appropriate education to the child. And what did the school district know at the time in September? I understand that as the school year ensued, there were serious difficulties and it became apparent that this was not the right measure. But I'm trying to focus on what was the school district's responsibility at the beginning of the school year. The school district had a Camden IEP because they had crossed out. As soon as the child got there, they crossed out. But they took it into their form. But they put their name on it. So it was the exact same IEP. Okay, so how can you do this? How can you carry out this IEP with a regular ed teacher, a regular ed aide, and 20 regular ed students? Impossible. That's why you got what you got here in this case. Well, why don't we focus on the compensatory education question for a moment. So, Judge Irenas is troubled by how you can do this. There are obviously certain court cases that say you can. I just want to focus on what you contemplate here. So, what form of compensatory education would you seek now in Georgia? She's moved. Hopefully, DF is doing fine. But that's what I think the grappling is going to be about. Okay. First of all, when Judge Samandel looked at Judge Irenas' case. Judge Irenas. Judge Samandel quote for this case. Judge Irenas got this case. What was it? After 18 months of trial. Before my client even got to put on one piece of evidence. Before she got to put on one witness. Her case was dismissed. Because she sat there for 18 months hoping for faith. And all she got was a hearing that lasted for a year and a half. She had no choice but to find somewhere else. Some other school district. Some other state who would educate her children. And that's what she did. Now, your issue about the practicality of the compound. No, actually I don't want to talk about practicality first. I want to talk about what specifically would you seek. You talk about practicality. Yeah, well, what I would seek is that the conjugal district as suggested in the Lewis-Katz immediate school versus MK in the Western District of Michigan. Was that they should contract with the new student's district. Or contract with an educational provider to provide the compound. Which could be an IDA for instruction for special ed students. It's 10 hours a week. So they can get him a tutor for 10 hours a week. And make up for the number of weeks that he missed. At the time the complaint was dismissed. That was 20 months. Approximately 80 weeks. 80 weeks times 10 would be 800 hours of compound. So they should contract with someone. If they're concerned about not having oversight. Then they can hire a second provider. To monitor what's going on with him down there in the school district. So there's no problem with it at all. Schools contract continuously out of state and in state. And in this very case. Colleges would contract with providers in this very case. To provide him with educational services. Can you follow through with Judge Greenway's question? Is there a period of time that you're asking for? Or how far would this go? Assuming that the contracting is the appropriate way to proceed. How far would it go? Your standard and which way for compound. Is from the time the school should have known he was getting an inappropriate education. To the time they should have resolved it. Now in this case it could be. It would have to end on the date that she moved to Georgia. Which is July 1st 2010. And the first day could be the first day of the IEP for the 2008 school year. But there seem to have been some other events. Where I assume the school district would argue that they were complying. And I gather in January they provided for one on one education. So would that mean that it would be only for four months or five months? The court could have ruled that. But the court dismissed it. And Judge Arreaz had to use the dismissal standard in his ruling. He has the wrong standard here. He's supposed to just look at the complaint. And make a ruling based on the complaint. And he makes findings of fact. When we didn't even put a witness on. So I don't think we can reach any decision on the merits here. Until we can complete the case. I just want to add one other thing to your question. Heather D case in this district. Held that they would create a fund. A trust fund for each child's education. What district are you talking about? The district of New Jersey or are you talking about our circuit? Your circuit. I think it was Heather D versus Northampton. They allocated $184,700 I believe. For the child's combat. To be put in a fund and only be used for the combat. So that's another option that this court has. This court has said that it prefers the services be provided. Not even a fund set up. But it didn't rule out a fund being set up. So if it's a matter of a parent spending money. Obviously that person. They can be reimbursed. If they move out of the school district. In this case you couldn't fund the cost. I understand that. And that's not the facts that we have here. So the question is. What form of compensatory education is indicated. When somebody moves out of the school district. When the school district should have done something that they didn't do. The compensatory ed. As the ALJ here said. As Judge Rodriguez said. They just don't see how it can be provided. But I did brief them below. Although the ALJ is a respondent. So we didn't know this was coming. But I did brief Judge Rodriguez below. On the same cases I'm telling you about. That they could contract from the services. Or they could set up a trust fund. That's how it could be done. That's the relief you identified for him that you sought. Or that's what you alluded to in your discussion of the cases. That's what I did in my brief for summary judgment. He didn't address those in his decision. His seven page decision. Do you want to talk about the attorney fee on the independent amounts? I don't have any questions. No. I think. Yes. I think we understand the attorney's fee situation. Unless some of my colleagues have questions. And if it's raised by the other side. You certainly can bring that up on your file. Yeah. I guess with the attorney fee. The district continually objected up until the day it was ordered. That they imposed the independent evaluations by our experts. So I don't see how they can argue.  When we really didn't agree to it. Okay. Thank you. Good. Mr. Rashami. Good morning. Good morning. Good morning. May it please the court. My name is Rafael Razari. I represent the Education Law Center. We remain the meeting's Q&A in this case. We respectfully request that this court reverse the witness holding below for two key reasons. First, the holding below undermines the logic and the purpose of lesser H and fairer C. In those two cases, the court created compensatory education as a form of relief for parents who could not confront the costs of their child's education. As a result, this holding plans to destroy compensatory education, which is the only remedy available to parents from low-income and poor families who rely on this remedy for their children. As our brief shows and my client's experience with advocating for poor and low-income families shows, these families tend to move quite frequently. Indeed, the plaintiff in this case has already moved twice. And the reason for the move is often to secure additional and a better education. Therefore, it is crucial that these families have compensatory education relief to help supplement whatever rights were denied in the previous school district. In addition, Your Honor, the holding below also creates a further conflict in the lower courts. There are cases in the lower court that find that compensatory education is not needed where a child leaves a district. But then there are cases also that find that the claim is moved if the child leaves the state. But if the court follows the reasoning in lesser H and in fairer C, which found that the remedy attaches at the time of the harm, which means that the remedy is to place the child in the same position that they should have been were it not for the harm, here the court has the authority to order a remedy, and that remedy is compensatory education. Just because a child left the state in this case doesn't mean that they lost their right to receive the remedy. They still have an ongoing harm that has not been remedied. And finally, Your Honor, it's important to note that this case creates a horrible incentive for school districts. Indeed, it is the same type of incentive that the court wanted to vitiate in lesser H, and in addition, the same that the Supreme Court wanted to vitiate in fairer C. In those two cases, the plaintiff aged out of the statute, and the court decided that it made no sense for the court not to be able to issue compensatory education, despite the fact that the plaintiff aged out of the statute. Had they not come to that conclusion, there would have been a situation where school districts could just deny rights to children who were 18 or 19 years old, just because the actual course of litigation takes a few years. Here, one could imagine a situation where a school district could simply provide less services or no services in the hopes that a child would just leave the district. That can't be the law in this circuit. It is unfair to children who come from these families, who rely on this belief as the sole remedy in these cases. It is crucial that this remedy remain viable. Isn't your best argument that it's unethical to Congress's intent with the idea? That is a very crucial point, Your Honor, because the purposes of the IDEA are to ensure that the rights of parents and their children are protected, and such that these children receive faith so that it can prepare them for a life of independent living and so forth. This holding vitiates that right. Like I said, the holding harms parents who cannot pay in front of these costs. Tuition reimbursement is available under the Act, and attorney's fees are available under the Act. But in a case such as this, where a parent doesn't have the funds to pay for the services, if there's only the meaning of the law, they would simply be out of luck. What's your thoughts on the form of compensatory education that could be provided in this case? Well, Your Honor, I would respectfully prefer to be plain on the issue. But, however, the services here, I believe you saw it, went to 180 for four months, and then he expanded the claim throughout the duration of the compensatory education. So one can imagine a situation where, as the plaintiff said, that time is monetized, and the district, Queens, common group can negotiate and find a suitable provider and pay the out-of-state district that amount of money. Or the parties can just come up with a suitable, can negotiate and come to a reasonable understanding. The larger point, Your Honor, is that districts negotiate in terms of services all the time. There are out-of-district placements, courts have ordered tuition reimbursement when a child has left the state, simply because this may be difficult for college or there's not enough of a reason to uphold this decision, which threatens to destroy compensatory education. Okay. Thank you. Good. Thank you very much, Mr. Starr. Mr. Starr, could you please say your name again? I'm sorry. Walter Kowalik. Yes. Could you bring that up a bit? That's right. Thank you. Okay. There's a number of issues that were raised in the briefing, but it seems to me that the issue regarding Judge Irene's witness decision seems to be the key issue. I think that the key point that we have to understand here is what the IDEA is designed to do. It's designed to ensure that students have the fully appropriate public education that they deserve. What we have in this case is a situation where a child moved from one district to another, specifically Camden to Collingswood, then moved from Collingswood to Georgia. The reason why I bring both of them up is because it's important to recognize what is going on here. They had an education fund drawn up as a mandate. They moved over to Collingswood, which developed an IP. The council is saying that they crossed off Camden and put Collingswood in. That is simply not the case. It was very similar to the one in Camden. Obviously, you have the same child, same problems. You're going to end up with similar IPs. It was signed by the county. It did not require a 5.111. Now, that's important for the argument in the alternative, is that even if it wasn't moved, there wasn't a violation of the FAPD. Well, Mr. Epstein says that the fact that the parents signed on the IEP is of no legal significance. I think it's very important, because what this question is, is did Collingswood err? Did Collingswood err in designing that IEP? Did they actually design a new IEP, or did they simply take the Camden IEP? They developed a new IEP, and the Camden IEP was part of the analysis that's done. But it wasn't simply that they took Camden, which Collingswood said to take. It's incorporated because... If it was, then they would have had an 8. They would have had an 8. The Collingswood IEP didn't require a 1018. And that's important because the way that the statute is designed, and the way the procedures are set up, Collingswood denies the IEP if the parent is dissatisfied with it. There are procedures to then address that point. And that's key here, because as you saw with the... and the district courtsmen with the enrollment and the archery, the records were important with the fact that this parent simply was not cooperating. She had a name on hand, and she had a certain thing that she wanted for her child, which she wanted to show certain things... But she wanted the one-on-one thing. Didn't she express that from the beginning? I mean, I know that you're focusing on she signed, but if you take that as a moment in time, from that moment in time forward, she wanted an aid. Well, no, I understand what you're saying. Even when we got to a point where we said, okay, well, this isn't... enrollment in any district education isn't appropriate for this child. And the evidence supporting that was voluminous. And then for the ALJ, the ALJ said, you're absolutely right. First, we're going to go home, and then we're going to go watch what happens. And it was a long-term process, because AAC refused to cooperate with the situation, refused to cooperate with the proceedings in relation to those determinations. And I think that the reason why that's important, it isn't for necessarily the knowledge of what this is about, but it's simply to say, look, there's a procedure set up where the construction department at Collinswood and the parents are supposed to be asking what they want the child to have. I mean, this is what... this is the process that you're going to resolve that dispute as between them. Now, once the parent says, I'm going to take this child and move to Georgia, and the plaintiff had made it on the record that, you know, all the full decisions that they're making, the three of them were knocked right out of the box by the fact that there were no replacement, the archer, and also the petition for insufficiency. I mean, the due process petitions that were dismissed. I think that Judge O'Neill has had it absolutely correct, because at that point, the parent can lose the child. Any interest that that child may have in terms of getting the full appropriate public education is subsumed in the duty of the new school district. And I think that the two cases that are going through... But you want to get to that point if you establish that at no period from the time that the child started in Camden... I'm sorry, from the time that the child started in Collinswood until he left, was he without the faith. Because if you determine that at any time, there was some deficit in what he was provided, then that obviously is what your compensatory education is, and then you can figure out what it is the deficit was, and is there an equitable way to resolve that. And so you basically have the two issues. One, Judge O'Neill is doing everything absolutely correctly, so there was no failure to provide faith. Why? Well, because essentially what you have is as soon as it became apparent that this child, that the IEP, which didn't require the one-on-one, was insufficient, they took the steps necessary to provide the one-on-one, and then after that... So it was determined, what, in November that he needed a one-on-one? Dates for... And then in January, in January he was provided one-on-one. He started the one-on-one, and then he started the process with regard to determining whether or not the hand-in-hand placement, in-district placement, was proper. And it was initially rebuffed, but then he filed it again, because he was continuing problems with... Basically, the child was a danger to himself and others, and injured other people as well. Yeah, but I'm trying to... I want to get fixed what the school district did during this period, because Mr. Epstein says that your revival from compensatory education from September to the time the puppies left for Georgia... Well, I think... Although I don't think that there was a violation, only because if the IEP is followed, I think that you've established defeat. And if it needs to be adjusted after that point, then there are procedures to adjust it after that point.  the violation of defeat. Well, no, but you've got to give us some facts here. You're making statements, but I'm not sure I don't follow... Factually, I don't follow what's going on. What I would say is that if there was a right to compensatory education, there were many years of one-on-one. So basically, there was often four months that there was a hand-in-hand, at which they could unarguably say that even if the IEP was incorrect at the beginning, that there wasn't a one-on-one. The judge's question is different. It's what are the facts of what the district provided that would counter any argument that there was no fate? So it is correct. One of the issues that the parties differ on is the one-on-one aid. But there are other components to which AC argued DF was not provided with these elements which detract from the notion that DF received fate. And that's the focus of the question. What did you provide? What did they argue you didn't provide that you think you did provide? Well, what I would say is this. I can't sit here and say more than they found the IEP because the question of the compensatory damages is limited to the one-on-one type. I'm not saying we can't find those papers. And on that, the record indicates that sometime after September the district ordered its own evaluation, and I guess based upon that, that it instituted a one-on-one in January. Do you know when they did their own independent evaluation? I can't find it in the record. It just says that they did their own evaluation, and based upon that, they then gave it one-on-one. I can't be more definite than sometime within a fortnight. But even beyond that point, you still have the issue of whether or not there's still a case of controversy as to the child who moves. Because, as I said before, the two situations that I think are really interesting because of the dynamic of it is when you have a child that moves to a private situation and when a parent pays that pocket and the situation of the child... That's an easy case. That is an easy case from my point of view. But let me just talk about this for just a second here. In both of those situations, when you move to a private school and when you graduate, there is no longer a school district that's responsible for providing for the director. So in both of those situations, yes, he has perfect sense to say the parent should be recompensated, and if there's a graduation then the services should be provided pursuant to the IDEA. Sure, then at that point, then the previous school district provided compensatory education proper. But here you don't have that. Here you have a situation where no school district which is required by the IDEA to provide a fit is basically handing the ball off to another which has the same exact responsibilities. It's the same situation as between Kenyon and Collingswood and Collingswood and... Are you making your argument that there could be damages in futuro? They're not. They're looking at a discernible and definite period of time and saying there was a deficit in fate at that time which they seek compensation from. You would agree with the following proposition. If there were no one-on-one for a year and that at the end of the year the parent left, you could calculate in a number of ways what that deficit either caused or could be replaced with, right? I mean, there could be a year in my hypothetical that Collingswood could pay for an aid at the next location, right? You agree with that? Well, isn't it that what you're talking about constitutes a malnation? Sure, yeah. That's the hypothetical. So you agree with that, right? That if there were that deficit that that could be compensated. You could come up with an arrangement, an agreement, or there could be an order with regard to that one year of one-on-one. Well, see, that's the decision. I don't think there can be an order because I don't think there's a case of calculation at that point if the next school district is a public school district that still under the obligations of the IDEA because that school district takes the child as it is and says, okay, well, based on this child's retirement and this child's circumstances, what do we need to provide to give this child what is the appropriate level of education? Okay? And so what you're talking about there is subsuming from activity. And what I think that the point that's talking about here is not the one-on-one. I think the point that the kid is in a deficit, right? And what the appellate counsel mentioned was a tutor for some period of time could be, or could satisfy the compensatory education. Do you disagree with that notion? Ab initio? Well, no, I mean, as a generalized concept, it's fine, but when you apply it here, you still run into the problem of can a court rule out a situation? Because let's change the hypothetical just a little bit and say, you know, there was this child who had, for circumstances, no homeschool, for example. And you came to a public school district with that exact same situation. They should have gotten a different level of education for the previous year because of the emotional difficulties or whatever. The school district, the public school district doesn't care if they lost their lost and we're going to take them as if that didn't exist. No, they have to pick the child as the child comes in and provide the proper care. Okay, so it simply doesn't matter that if they're moving from one school district to another or simply coming from a situation where they're homeschooled, the fact that there's a deficiency in the child is part of what the new school district has to evaluate, because once the child leaves the district, the former district has no obligation to the child and any notion of compensatory education should stop at the time the child leaves. If they're moving to another school district that has the same obligations under the IDEA, if it's a different situation, if they're moving to a different school district, so the rule you would have us make is if you're leaving and going to a private school, then we can discuss compensatory education. If you're leaving and going to another public school, whether it's the next county or California, then no. Then it's assumed that the next school district has obligations. And I think what the system does when it does something wrong comes with then essentially pains to correct kids' problems. And the same thing most of our students are doing in general, every school district is under the same obligation. What about what Nishemany talks about as far as what the basis of the IDEA is? The Sixth Circuit goes to a great effort to talk about what the purpose of it is and why compensatory education in the next district makes sense. Do you just have a fundamental disagreement with that? No, I'm in agreement as to what the purpose of the IDEA is. But what I'm saying is how is that based on how the statute is directed and what the purposes of it is. What is the court's obligation to when you have a situation like this? It's akin to I think it was a Chambers case where the court talked a great length about what limitations are and how you in my opinion is basically a student or a parent can't sue under that statute for any essentially pain and suffering caused by a lack of faith. And I think that that is a key although it's not directly related. It isn't pain and suffering. It's a compensatory They talk about tort-like damages it's not a tort-like statute. And I think that But the remedy is specialized education not pain and suffering. I just have one question. We said in SH that whether the district fulfills faith obligation is a question of fact. Has there been any findings of a violation of faith? Well I think that when the case was put before Judge Araminas as he discussed in his opinion essentially given the standard of review in these type of cases he's decided essentially the case on the record is presented by the parties both parties mean for summary judgment on that record and I think that his conclusion Is there any finding in the ALJ because that's subject to he has to accept or re-review or something I can't remember exactly but was there a finding made here by the ALJ that there was a faith violation? To be honest I'm not sure but I do know that Judge Araminas did have in his opinion a modification of the standard of review. Before you leave I want to hear your adversaries say that it's quite common for school districts to contract between themselves and that when children move from district to district it's quite normal to set up protocols or arrangements to account for the lack of a proper faith in the earlier or the prior school district. Is that your experience as well? Yeah I mean it does occur sure What's the problem here? The problem here is that in any of the situations it's still a lot of controversy if you have a lot of controversy still going on as part of the proceedings and providing public care to the school district that would happen here. We're talking about a situation where you have again a case of controversy because the our current school district any new that comes would have a substantial impact. So the college would still have a duty under the IDEA and for whatever reasons it has to do what it is to contract a private loan. For example in this case there was discussion about something from a child to a contract if it was. So what creates in your view I take it the case of controversy would be created in a situation where a private loan would be a case of controversy in that instance. You would say that there is a case of controversy in that instance. Correct for reimbursement yes. And in the case I was clear on that. And I think you can draw a distinction instead of purchasing that education for free. It was a charity situation. I would suggest there is no case of controversy in that case. The limitation the case talks about is simply reimbursement. If you want a loan for reimbursement you want a case of controversy. Any other questions? Thank you very much. Very briefly. In my belief I quote the administrative law judge saying that I know parties have come before me saying the IEP is flawed. You are both in agreement on that and that's why we are here. The IEP is flawed. I'm sorry. The IEP is flawed. You are both in agreement the IEP is flawed. That's in page 11 of my brief and it's in the transcript at A282. Again, we are here on the appeal of a sus ponte dismissal. I am not sure why you look at the IEP and the imagination I did  at this time.     The IEP is  I'm not sure why you are here on the beginning of  hearing. The IEP is flawed. It's not reasonable to say that from that point onward. The IEP was not reasonably calculated to confirm FAPE. There was deficiencies in the IEP. They didn't appropriately address his behavioral disorders and provide him with an appropriate behavior plan as evidenced by an answer to your other question. In August 2009 they found a motion saying we want our FBA implemented. The FBA was appointed by the judge under her own authority to appoint experts. Our experts agreed that the behavior plan was inappropriate but disagreed with Collinswood's behavior plan. My experts reports were approximately August 2009. And they were submitted to the judge at the time. She changed the state put twice. And the first time she ruled on that she said I don't see anything I agree with plans. There's no reason to change the state put  The judge said I don't    with  The judge said I don't see anything I agree with plans. The judge said I don't see anything I agree with the plan. There's     state put plan. And the judge said I don't with plans. The judge said I don't with plans. I don't agree with plan. The judge  there's no plan. And the question about the aid was why couldn't it be next year. I agree with colleagues would that be part of the IEP. The plan is additional. My client in first grade. So again, the formula I would use is that you have two hours of tutoring from a special ed teacher for every day that the child missed. You're suggesting that in this context because of the procedural posture before judge Irenas, what your desires are with regard to compensatory ed are not in the record. So the perfect world I presume you would say reverse and remand for discussion of compensatory ed. You have a due process hearing that is going on for 18 months with only the school district proceeding because they have the burden of proof in New Jersey. We haven't even been heard yet. So don't you have to finish the due process? I'm talking about your perfect world. I would say two hours for each day. I'm asking you to tell me what your compensatory ed is. I'm asking you if you agree with the proposition that it's in a perfect world you're asking for a reversal and a remand for a discussion of compensatory ed. A determination or a hearing on what constitutes appropriate compensatory education. Correct. I agree with that. The question is does it go back to the district court or does it go back to the office of administrative law? Of course you have the other issue, the attorney fee issue, which the district court would have to deal with. And what are you doing with  I'm asking you if you agree with  proposition that it's in a perfect world you're asking for a reversal and a hearing on what constitutes appropriate education. Correct. I agree with that. The question is does it go back  district  does it  to the office of  law? Of course you have the other issue, the attorney fee issue, which the district court would have to deal with and I'm   if you agree with proposition  it's     asking for a reversal and a hearing on what constitutes appropriate education. Correct. I agree with that. The question is does it go back            attorney fee issue, which the district court would have to deal with and I'm if you agree with proposition it's asking